UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| DAVID SABRI,<br><br>                    Plaintiff,<br><br>    v.<br><br>JPMORGAN CHASE BANK, N.A.,<br><br>                    Defendant. | Case No. 7:22-cv-2490<br><br>COMPLAINT FOR VIOLATIONS OF THE ELECTRONIC FUNDS TRANSFER ACT |

Plaintiff David Sabri ("Plaintiff") brings this action against defendant JPMorgan Chase Bank, N.A. ("Chase" or "Defendant") and alleges, based upon Plaintiff's personal knowledge, the investigation of counsel, and information and belief, as follows:

## I.    INTRODUCTION

1. This is an action to recover damages for violations of the Electronic Funds Transfer Act, 15 U.S.C. §§1693, *et seq*. (the "EFTA") and Regulation E promulgated thereunder, and common law conversion.

2. As described in detail below, an identity thief made a series of unauthorized withdrawals from Plaintiff's account that ultimately totaled $225,000. Chase reimbursed Plaintiff for some of those losses, but has refused to repay $44,000 of the funds stolen from his account.

3. Chase also violated the error resolution procedures set forth in the EFTA by, *inter alia*, failing to conduct a timely investigation into the dispute, by failing to provide a written report of its investigation and determination, and by failing to provide any provisional credit to Plaintiff for the stolen funds.

## II. PARTIES

4. Plaintiff resides in Rockland County, New York, and qualifies as a "consumer" as defined and protected by the EFTA, 15 U.S.C. §1693a(6).

5. Defendant JPMorgan Chase Bank, N.A. is a national bank headquartered at 270 Park Avenue, New York, NY 10017.  Chase qualifies as a "financial institution" under the EFTA, 15 U.S.C. §1693a(9).

## III. JURISDICTION AND VENUE

6. The claims asserted in this complaint arise under 15 U.S.C. §1693, *et seq.*  This Court has jurisdiction over the subject matter of this action under 28 U.S.C. §1331 and 15 U.S.C. §1681p.

7. Supplemental jurisdiction exists for the state law claims under 28 U.S.C. §1367.

8. Venue is proper in this District under 28 U.S.C. §1391(b).

## IV. STATEMENT OF FACTS

### A. The First Set of Unauthorized Transfers (January 31, 2022)

9. In January 2022, Plaintiff had a depository account with Chase ending in 7569 (the "First Account").

10. The First Account was established for personal, family, or household purposes, and qualified as an "account" under the EFTA and Regulation E.

11. On January 31, 2022, Plaintiff attempted to access the First Account online but was blocked.

12. He immediately went to a local Chase branch to investigate.  A Chase banker advised Plaintiff that he needed to call Chase customer service for assistance.

13. Plaintiff then called the Chase fraud unit. A Chase representative told Plaintiff that access to the First Account was blocked because of certain suspicious activities involving a new business checking account. The Chase representative stated that it would reactivate the First Account, but that Plaintiff needed to open a new checking and saving account to ameliorate the potential risks of fraud.

14. After the hold was lifted, Plaintiff logged on to the First account and saw that a total of $90,000 had been transferred out of the First Account in two separate transactions to an unfamiliar business account ending in 7768.

15. Plaintiff's name appeared on the business account, along with an unfamiliar Illinois entity called Sabri Realty Company LLC.

16. Plaintiff is not familiar and has no association with the Sabri Realty Company, and is not involved in any real estate business.

17. After Plaintiff reported the unauthorized transfer, Chase canceled the transfer and returned the $90,000 to the First Account.

18. Chase later sent Plaintiff a letter dated March 4, 2022 stating that it verified that Plaintiff did not open the Sabri Realty Company account ending in 7768. In the letter (which was inexplicably addressed to the Sabri Realty Company), Chase wrote that it confirmed that Plaintiff did not open the account, and that the claim was forwarded to Chase's fraud team for review.

**B. The Second Unauthorized Transfer (February 1, 2022)**

19. On February 1, 2022, Plaintiff opened a new depository account ending in 1095 (the "Second Account") and transferred all funds from the First Account into the Second Account.

20. The Second Account was established for personal, family, or household purposes, and qualified as an "account" under the EFTA and Regulation E.

21. Somehow, the identity thief immediately learned about the Second Account and promptly initiated an online transfer of $90,000 from the Second Account to another unfamiliar business account registered to the Sabri Realty Company ending in 1059.

22. Later that day, Plaintiff tried logging on to his Chase account but was blocked.

23. He called the Chase Fraud Department to inquire and was informed about another suspicious transaction.

24. Plaintiff noted that he was the victim of identity theft and informed the Chase representative that he was officially revoking authorization for all electronic fund transfers out of the Second Account. Plaintiff further stated that transfer requests from the Second Account should only be approved if made in-person at a Chase branch by someone with valid identification.

25. The representative acknowledged these instructions, asked Plaintiff to file a formal police report to prevent future losses, and unlocked Plaintiff's account.

26. Chase then reimbursed Plaintiff for the unauthorized transfer and, on February 4, 2022, returned the $90,000 to the Second Account.

27. On February 9, 2022, Plaintiff filed a formal police report with the Ramapo Police Department (Case No. RPD-22-001396).

28. Plaintiff faxed a copy of the report to Chase on or about February 14, 2022.

29. By letter dated March 4, 2022, Chase confirmed that Plaintiff did not open the 1059 account.

**C. The Third Set of Unauthorized Transfers (February 14, 2022)**

30. The identity thief struck again on February 14, 2022. This time, the thief transferred a total of $24,000 in two separate transactions initiated by telephone.

31. These funds were transferred from the Second Account to yet another unfamiliar depository account ending in 0097.

32. Plaintiff's name appeared on the 0097 account, along with an individual named Vincenthia N. Lair and an unfamiliar Texas address, 2333 Bering Drive, Apt. 232, Houston, TX 70057.

33. Plaintiff immediately called the Chase Fraud Department, reported the unauthorized transfers, and requested that the money be returned.

34. The representative responded that it would take five business days to process the claim.

35. By letter dated February 17, 2022, Chase informed Plaintiff that it had completed its investigation and determined that the February 14, 2022 transfers from the Second Account were authorized. The letter stated, in pertinent part, as follows:

> Update:   **We have updated information about your claim**
>
> Date of Inquiry:  02/16/2022
> Claim Number:  454728437060001
> Card ending in:
> Claim related to Account ending in:   1905
>
> Dear DAVID SABRI:
>
> We completed our research for the transaction(s) you reported on 02/16/2022.
>
> **Here's what you should know**
>
> - We found that the transaction was processed according to the information you provided or was authorized.
> - No adjustment will be made to your account at this time.
> - Contact us if you would like to request the information we used for our research.
>
> If you have questions, please call us at 1-866-564-2262.  We're available Monday through Friday 9 am to 9 pm or Saturday 9 am to 8 pm ET.

5

* * *

**Disputed Transaction(s):**

| Transaction Date | Description | Merchant Description (if available) | Transaction Amount | Disputed Amount |
|---|---|---|---|---|
| 02/14/2022 | | | $9,000.00 | $9,000.00 |
| 02/14/2022 | | | $15,000.00 | $15,000.00 |

### D. The Fourth Unauthorized Transfer (February 16, 2022)

36. Then, on February 16, 2022, another $20,000 was transferred from the Second Account to the same fraudulent account ending in 0097 (the "0097 Account").

37. Like the February 14 transfers, the February 16 transfer was initiated by telephone.

38. Plaintiff immediately called the Fraud Department that same day to report the unauthorized transfers. This time, he was informed that Chase would not refund the money unless he filed a new police report.

39. The next day, Plaintiff visited the Chase branch at 410 Route 59, Monsey, NY 10952 to report the fraud. At the branch, he filled out and submitted an Identity Theft Declaration and made a formal claim (Chase Claim No. 454728437060001).

40. Then, on February 18, Plaintiff filed a second police report with the Ramapo Police Department (Case No. RPD22-001772).

41. Plaintiff picked up a copy of the second police report on February 23, 2022 and personally hand-delivered it to the Chase branch located at 410 Route 59, Money, NY. That same day, Plaintiff also faxed a copy of the report to Chase.

42. Chase never issued a provisional credit in connection with the February 16 transfer.

43. To date, Chase has not issued a report of its alleged investigation into the February 16 transfer.

44. To date, the issue remains uncorrected.

### E. Chase Willfully Failed to Investigate the Unauthorized Charges

45. The EFTA and Regulation E establishes error-resolution procedures for unauthorized electronic fund transfers. Specifically, the EFTA requires a financial institution that receives timely notice from a consumer of an error to investigate the alleged error, determine whether an error has occurred, and report or mail the results of the investigation and its determination to the consumer within 10 business days. *See generally* 15 U.S.C. §§1693f, 1693g.

46. The EFTA places the burden of proof on the financial institution to show that the consumer is liable for unauthorized transfers.

47. A reasonable investigation would have included review of one or more of the following items, which would have led Chase to conclude that the fraud had occurred and would have revealed, among other things, that:

    a. Plaintiff did not authorize or consent to the disputed transactions out of the Second Account and received no benefit from unauthorized transfers;

    b. Telephone recordings in Chase's possession would have revealed that Plaintiff had expressly revoked authorization for any electronic fund transfers, and told Chase that transfer requests should only be permitted if made in person in a physical branch by a person with appropriate identification;

    c. The unauthorized transfers were initiated electronically in contravention of Plaintiff's unambiguous instructions;

    d. Plaintiff promptly reported the fraudulent transactions, and has consistently disputed the validity of the transfers, both in person and by telephone;

    e. Chase had already concluded that Plaintiff was the victim of identity theft, that at least two other Chase accounts had been opened in Plaintiff's name by the identity thieves,

and that several electronic fund transfers out of the First Account were initiated by the identity thieves and were therefore unauthorized electronic transfers;

      f.      Plaintiff has never lived in Texas and there is nothing in his customer profile to connect him the Texas address on the fraudulent account;

      g.      Plaintiff does not know "Vincenthia N. Lair" and there is nothing in his customer profile (aside from the account at issue) to connect him with "Vincenthia N. Lair;

      h.      Plaintiff has no history of making false or unverifiable fraud reports;

      i.      Plaintiff has no criminal history;

      j.      Plaintiff has no history of irresponsible or fraudulent account use; and

      k.      No other proof exists to refute Plaintiff's claim.

### F. Plaintiff Has Been Damaged

48.      In addition to the $44,000 that it has refused to return, Chase's unlawful conduct has caused Plaintiff to suffer actual damages and emotional distress.

49.      Plaintiff has spent countless hours on the telephone with Chase representatives trying to recover his money. He has spent hours on hold, and Chase representatives sometimes hang up on Plaintiff.

50.      To make matters worse, the Chase representatives have been providing mixed information about his claims. For example, with respect to the status of his claim, Plaintiff has been told that his claim was denied, that it was approved, and that the investigation is ongoing. Similarly, Chase representatives have told Plaintiff that the bank was still waiting for a police report even though other representatives confirmed that Plaintiff already submitted a police report.

51.      The mixed messaging from Chase has forced Plaintiff to go into a physical branch on multiple occasions for a clear response regarding the status of his claim, including:

      a.      On February 17, 2022, Plaintiff visited the Chase branch located at 410 Route 59, Monsey, NY to file an identity theft complaint. On that visit, Plaintiff spoke with a banker named Jessica.

      b.      On February 28, 2022, Plaintiff visited the Chase branch located at 405 West Route 59 in Monsey, NY for a status update.

      c.      On March 4, 2022, Plaintiff visited a Chase branch located at 501 Chestnut Ridge Road, Money, NY for an update. On that visit, Plaintiff spoke with a banker named Kathleen McGrade.

      d.      On March 7, 2022, Plaintiff visited the Chase branch at 501 Chestnut Ridge Road, Monsey, NY. Again, Plaintiff spoke to Kathleen McGrade to try to resolve his claim.

      e.      On March 8, 2022, Plaintiff visited the same branch at around 9:30 am. During that visit, Plaintiff sat with Ms. McGrade for nearly two hours before he was called to attend to a family emergency (*see infra*). Later that day, Ms. McGrade called Plaintiff and informed him that she was still working to resolve the claim and that she would report the issue to Chase management.

52.      Chase's misconduct also prevented Plaintiff from properly attending to a family medical emergency, which caused Plaintiff to suffer serious emotional distress.

53.      Specifically, Plaintiff's wife and newborn child have spent the past several weeks in the hospital recovering from post-partum complications. Because he had to devote so much time to deal with Chase, Plaintiff was unavailable to provide much-needed support to his family during this difficult time.

## COUNT I

### Violation of the EFTA's Error Resolution Provisions, 15 U.S.C. §1693f

54.      Plaintiff repeats and realleges the foregoing allegations as if set forth in full herein.

9

55. Plaintiff's telephone calls to Chase in February 2022 in which he explained that he had not authorized the transfers constituted notification to Chase of an error under §1693f.

56. These phone calls triggered Chase's obligation to comply with the EFTA error resolution rules, which required Chase to, *inter alia*, investigate the error and determine whether an error had occurred.

57. Defendant violated the error resolution provisions of under the EFTA because:

   a. Defendant failed to refused to conduct an adequate or reasonable investigation into the errors;

   b. Defendant did not have a reasonable basis for believing that the unauthorized transfers were authorized;

   c. Defendant knowingly and willfully concluded that the disputed transaction were authorized when that conclusion could not have reasonably been drawn from the evidence available to Defendant;

   d. Defendant never issued a provisional credit for the February 16 transfer; and

   e. Defendant never issued the results of its investigation for the February 16 transfer.

58. For each violation, Plaintiff is entitled to statutory damages of up to $1,000, actual damages, reasonable attorney's fees and costs.

59. Under 15 U.S.C.§1693f(e), Plaintiff is also entitled to treble damages in an amount to be determined at trial.

## COUNT II

### Failure to Refund Unauthorized Transfer in Violation of 15 U.S.C. §1693g

60. Plaintiff repeats and realleges the foregoing allegations as if set forth in full herein.

61. The EFTA places sharp limitations on consumer liability for unauthorized transactions.

62. Because Plaintiff did not give actual authority to the fraudsters to initiate the transfers, the transactions initiated by the fraudsters constituted "unauthorized electronic fund transfer" under 15 U.S.C. §1693a(12).

63. Because Plaintiff timely notified Chase about the unauthorized transfers, Plaintiff cannot be held liable for those transfers unless Chase could demonstrate that the transfers were in fact authorized.

64. Under §1693g(b), the burden of proof is on Chase to demonstrate that the challenged transfers were authorized.

65. Chase cannot and did not plausibly establish that the challenged transactions were "authorized" and thus cannot hold Plaintiff liable for those transactions.

66. By holding Plaintiff liable for the full amounts of the unauthorized transfers, Chase has the EFTA.

67. Additionally, because Chase did not have a reasonable basis for believing that Plaintiff's account was not in error, Chase's conduct violated §1693f(e), entitling Plaintiff to treble damages.

## COUNT III

### Common Law Conversion

68. Plaintiff repeats and realleges the foregoing allegations as if set forth in full herein.

69. At all relevant times, Plaintiff was entitled to the exclusive use, possession, and enjoyment of the funds in the Second Account.

70. At the time of the transfers, Chase did not have the present right to use, take possession of, or move the funds in the Second Account.

71. By unlawfully refusing to credit the funds back to Plaintiff, Chase intentionally invaded, interfered with, and deprived Plaintiff of the use, possession, and enjoyment of his

11

property without claim of right, and substantially intermeddled with Plaintiff's property without claim of right.

72. As a result of Chase's unlawful conversion of the funds, Plaintiff has suffered damages in an amount to be determined at trial.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff demands a judgment:

a) pursuant to 15 U.S.C. §1693m, awarding Plaintiff statutory damages, actual damages, punitive damages, and reasonable attorney's fees and costs,

b) pursuant to 15 U.S.C. §1693f, awarding Plaintiff treble damages; and

c) awarding such other relief as to this Court may seem just and proper

## D) JURY DEMAND

Plaintiff demands a trial by jury.

Dated: Brooklyn, New York　　　　**LAW OFFICES OF MOSHE BOROOSAN, P.C.**
March 28, 2022

*/s/ Moshe O. Boroosan*
MOSHE O. BOROOSAN
1318 Avenue J, 2nd Floor
Brooklyn, NY 11230
(404) 857-6229
moshe@boroosanlaw.com

*Attorneys for Plaintiff David Sabri*